UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    KEVIN G. MARCOLA                            Case No. 07-23438-dob
    and SUZANNE MARCOLA,                 Chapter 13 Proceeding
          Debtors.                               Hon. Daniel S. Opperman
_____/

OPINION REGARDING UNITED STATES' MOTION TO DISMISS BANKRUPTCY CASE

Introduction and Procedural Background

This case involves a golf course and restaurant owned by the Debtors, Kevin and Suzanne Marcola, that they operated under the assumed name of Arrowhead Golf & Country Club. The Debtors also have an interest in an entity known as Cagle & Marcola, Inc. that operates the bar at the Arrowhead Golf & Country Club. Initially, the Debtors filed this Chapter 13 Petition to sort out their financial problems with two secured creditors, J.P. Morgan Chase Bank and First State Bank. Their attorney, Thomas Budzynski, was able to successfully negotiate a compromised resolution among these parties, and the Debtors' Chapter 13 Plan was confirmed on May 7, 2008.

The issues before the Court in this case stem from the inability of the Debtors' various business enterprises to pay taxes to the Internal Revenue Service. The most immediate matter brought to the Court's attention was a Motion by the Internal Revenue Service to order the Chapter 13 Trustee to remit all plan funds to the Internal Revenue Service for tax liens assessed against Cagle & Marcola. This Motion drew a Response by the Debtors. Shortly thereafter, Mr. Budzynski moved to withdraw as counsel, and this Court allowed his withdrawal on May 30, 2011. Subsequently, the Debtors negotiated a resolution with the Internal Revenue Service, which involved the payment of $16,000 held by the Trustee, with $8,000 paid to the Internal Revenue Service and

1

$8,000 divided between J.P. Morgan Chase Bank and First State Bank. The Debtors also agreed to dismiss their Chapter 13 Plan and to not seek protection of the Bankruptcy Court for one year. This proposed resolution drew the Objection of First State Bank as to the division of the $8,000 between it and J.P. Morgan Chase Bank, as well as the Objection of Mr. Budzynski as to whether the Debtors were fully aware of the consequences of their proposed resolution. The Court held a hearing on August 25, 2011, and was informed by Mr. Budzynski that he had serious concerns of whether the Debtors understood the exact nature of dismissal, including the voiding of the agreement he negotiated among the Debtors, J.P. Morgan Chase Bank and First State Bank. Since neither J.P. Morgan Chase Bank or First State Bank could state with certainty the effect of the dismissal on the settlement and because the Debtors were without counsel and not in Court, the Court continued the hearing to September 23, 2011. By Order of the Court dated September 1, 2011, the Court directed J.P. Morgan Chase Bank and First State Bank to file a statement with the Court regarding the effect of the dismissal on this settlement and directed the Debtors to appear in Court.

In the interim, Mr. Budzynski filed an Application for Fees and Expenses in the amount of $25,000.00 and $217.09, respectively. No objection to this Application was filed and the Court signed an Order granting these fees and expenses on September 21, 2011.

On September 23, 2011, the Debtors, acting pro se, appeared in open Court along with counsel for the Internal Revenue Service, First State Bank, and Mr. Budzynski. With permission of the Court, Mr. Budzynski left the proceedings after informing the Court of his position. After confirming that both J.P. Morgan Chase Bank and First State Bank took the position that the Debtors' earlier settlement with them would be voided upon dismissal, the Court heard the testimony of Kevin Marcola and arguments of the parties remaining in the courtroom.

Findings of Fact

In addition to the recitation of the procedural history, the Court makes the following findings of fact based upon a review of the Court's docket, the pleadings filed with the Court, the exhibits admitted on September 23, 2011, and the testimony of Kevin Marcola.

The Debtors, Kevin and Suzanne Marcola, own and operate a golf course and restaurant under the assumed name of Arrowhead Golf & Country Club. The bar and alcohol enterprises normally associated with a restaurant and golf course are under the auspices of a separate entity known as Cagle & Marcola, Inc. As Mr. Marcola testified, he and his wife have for many years taken the money from all of these enterprises and have reported the receipts through Cagle & Marcola. For many years, Mr. Marcola was employed, but he lost his job in June of 2010 and has been unemployed since. Since June, 2010, his income was derived solely from the operations of the golf course, restaurant, and bar, as well as unemployment benefits.

The Internal Revenue Service is owed approximately $40,000 from March 2008 to the present and $219,000 from September, 1999, through December, 2007. Completely accurate calculations of the amounts owed to the Internal Revenue Service are difficult, if not impossible, given payments received from various sources and the method that the Debtors used to conduct business.

Adding to this uncertainty is the Debtors' decision in response to a levy by the Internal Revenue Service to channel all money received from Cagle & Marcola through their personal account on behalf of Arrowhead Golf & Country Club. In essence, the Debtors co-mingled monies received from Cagle & Marcola with their other funds, including unemployment benefits, funds from the golf course and restaurant, and monies received from Mr. Marcola's 401k. As testified by

3

Mr. Marcola on September 23, 2011, however, neither he or his wife have been employed outside of working in regard to the Arrowhead Golf & Country Club or Cagle & Marcola.

Counsel for First State Bank also reported to the Court that he had confirmed the amount of payment of the $8,000 between J.P. Morgan Chase Bank and First State Bank. Although the specific amount divided between these two creditors was not stated, the Court adopts the agreement between and among the Internal Revenue Service, J.P. Morgan Chase Bank, and First State Bank as to the division of funds.

## Statement of Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

## Analysis

A bankruptcy court should "form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

Courts have used the following factors: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988) (court must weigh all conflicting interests); *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929); *In re Dow Corning Corp.*, 198 B.R.

214, 221-22 (Bankr. E.D. Mich. 1996).

Pursuant to 11 U.S.C. § 1307(b), Chapter 13 debtors have an absolute right to dismiss their bankruptcy case with very limited exception in cases of bad faith. In this case, Debtors have proposed a reasonable settlement, which includes the voluntary dismissal of their Chapter 13 case.

At the September 23, 2011, hearing, the Debtors satisfied the Court that they understood the general nature of their agreement with the Internal Revenue Service, the effect that agreement had on their settlement with J.P. Morgan Chase Bank and First State Bank, and their need to dismiss their case. With this information, the Court concludes that the dismissal of this Chapter 13 is appropriate and orders that the case be dismissed.

Turning to the issue of the $16,000 held by the Trustee, the issue this Court must decide is who the recipient of the $16,000 should be: (1) the Internal Revenue Service; (2) J.P. Morgan Chase Bank; (3) First State Bank; (4) Mr. Budzynski; or (5) the Debtors?

Generally speaking, upon the dismissal of a Chapter 13, monies held by a Chapter 13 Trustee are returned to the Debtor. In the event that administrative expenses and claims exist, such as that of Mr. Budzynski, these claims are paid and any remainder is tendered to the Debtors. Mr. Budzynski argues that the general rule should be applied and that the $16,000 should be sent to him.

In response, the Internal Revenue Service and, to a lesser extent, J.P. Morgan Chase Bank and First State Bank, claim that the $16,000 should be paid to each of them. In support of their argument, the Internal Revenue Service claims that the $16,000 is generated from income derived by Cagle & Marcola and, given the testimony of Mr. Marcola, all monies received from the golf course, restaurant, and bar and alcohol enterprises were funneled through Cagle & Marcola to create the obligation owed to the Internal Revenue Service. Moreover, once the Internal Revenue Service

began levying accounts of Cagle & Marcola, the Debtors diverted funds from Cagle & Marcola's bank account to their own account such that the co-mingled funds cannot be traced and, therefore, are subject to levy by the Internal Revenue Service.

Although Mr. Budzynski initially argued strenuously at the August 25, 2011, hearing that such was not the case, the evidence before the Court casts doubt on whether the general rule should be applied. First, the testimony of Mr. Marcola was that the Cagle & Marcola account was discontinued once the Internal Revenue Service began levying. Second, a close review of Exhibit 8 leads this Court to the conclusion that the funds generated by the golf course and restaurant were indeed co-mingled with income received by Cagle & Marcola. The nature of Exhibit 8, however, does not allow the Court to conclude with exactitude that the $16,000 held by the Chapter 13 Trustee is that of Cagle & Marcola. On the other hand, a review of Exhibit 8 does allow for the conclusion that at least $16,000, and considerably more, was deposited by Cagle & Marcola into this account which subsequently was a source of payment for many months by the Debtors to the Chapter 13 Trustee.

With this record, and with the actions of the Debtors in regard to the co-mingling of Cagle & Marcola and Arrowhead Golf & Country Club monies, this Court concludes that the position of the Internal Revenue Service should be and is accepted in this case. The Court reaches this conclusion with reluctance in that the general rule is traditionally applied in Chapter 13 cases, but this is one of the unique cases that proves the exception to that rule. Second, the adaptation of the position of the Internal Revenue Service with corresponding payments to J.P. Morgan Chase Bank and First State Bank, still allows all parties, including Mr. Budzynski, to make arrangements for payment of the obligations outside of this Court.

<u>Conclusion</u>

To conclude, the Court overrules Mr. Budzynski's Objections to the Notice of Presentment filed by the Internal Revenue Service in this case. Subject to the agreement of the division of monies between J.P. Morgan Chase Bank and First State Bank, the Court overrules the Objections of First State Bank.

Upon modification of the Order originally presented by the Internal Revenue Service, the Court will sign an Order consistent with this Opinion.

cc: Kevin and Suzanne Marcola

**Signed on November 28, 2011**

                                                       **/s/ Daniel S. Opperman**
                                                       **Daniel S. Opperman**
                                                       **United States Bankruptcy Judge**